FILED
2013 Nov-22  PM 03:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

```
NIRANDORN SEVARIT,              )
                               )
          Plaintiff,           )
                               )
     v.                        )  CIVIL ACTION NO. 12-CV-1170-WMA
                               )
CAROLYN W. COLVIN,             )
Acting Commissioner of Social  )
Security,                      )
                               )
          Defendant.           )
```

## MEMORANDUM OPINION

### I. PRELIMINARIES

It has been over fifteen years since the undersigned has been given the responsibility for reviewing a disability denial by the Social Security Administration. When this court took senior status, it disassociated itself from Social Security appeals. For reasons that need not be stated, this court is again taking Social Security appeals, this being its first in over fifteen years. The court hopes that its rustiness will not become too apparent and that its unfamiliarity with the drastically proliferated social security regulations will not stand in the way of achieving a correct result.

Before undertaking to express its disagreement with the Commissioner, with the Administrative Law Judge ("ALJ"), and with the Appeals Council, the court digresses to express its chagrin and displeasure with the procedure by which the case arrived in this court. As best this court can ascertain from the Record, when a

person claims to be entitled to disability benefits, he files a claim with the Commissioner.  If the Commissioner agrees with the claimant, he grants the claim, and the proceeding is closed.  If, however, the Commissioner denies the claim, the claimant can appeal to an ALJ, who then conducts a *de novo* hearing, using the evidentiary materials submitted by the claimant and by the Commissioner, but with the right and sometimes the obligation to receive and consider oral testimony.  If the ALJ overrules the Commissioner and grants the claim, the proceeding is closed.  If, however, the ALJ's decision confirms the Commissioner's denial, the claimant can file an appeal to the Appeals Council, which can affirm the ALJ, or reverse the ALJ and enter its own decision differing from that of the ALJ, or it can reverse the ALJ and remand the case to the ALJ with instructions.

In contradiction to the ordinary meaning of words in the King's English, the Appeals Council, after looking at the record, including the evidence received by it after the ALJ's decision pronounced as follows on page 1 of the Record:

**"WE HAVE DENIED YOUR REQUEST FOR REVIEW."**

If this language is meant to convey to the claimant that he has lost his appeal, it is a strange way of saying it.  It sounds as if the Appeals Council is saying that it lacks jurisdiction to hear the appeal.  Someone flunked Semantics 101.  The Appeals Council would explain its so-called "denial of the request for review" by

listing possible bases for granting a review, most, if not all, of which require an actual review of the ALJ's decision in order to reach the so-called decision "not to review."  This is so illogical, so self-contradictory, and so contrary to ordinary jurisprudential and procedural principles, as to be the subject of this court's criticism and derision.  Why could not the Appeals Council simply say that the ALJ's decision is "Affirmed"?  This would be what any appellate tribunal would say when rejecting an appellants' arguments.  When the Appeals Council here said, "We will review your case for any of the following reasons," and then listed reasons, including that "**the decision is not supported by substantial evidence**," the Appeals Council was necessarily saying that it had examined the evidence and found it to be substantial enough to justify the conclusion reached by the ALJ.  This is a strange and puzzling way to admit to having reviewed something without granting a review of it.  This way of expressing what has gone on makes absolutely no sense.

Not being called upon in this case to straighten out this total semantic confusion, the court will simply deem the so-called denial of review to be an affirmance of the ALJ after having conducted an appropriate review.  Of course, it would not hurt this court's feelings if the Commissioner should decide to amend the regulations to substitute for the strange procedure employed here

a procedure and a way to explain what is happening that makes sense.

Nirandorn Sevarit ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for a judicial review of a final adverse decision that denied his application for Supplemental Security Income.  Plaintiff timely pursued and exhausted the administrative remedies available to him before the Social Security Administration.  Based on the Record and the briefs submitted by the parties, the court finds that the Commissioner's decision must be reversed and the case remanded to the Commissioner[1] for further proceedings.

## II.    STANDARD OF REVIEW

This court's sole function is to determine whether substantial evidence supports the Commissioner's findings of fact and whether proper legal standards were employed. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end, this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id*. (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*.  This court may not decide the facts anew,

---

[1] When a case is remanded by a district court to the Commissioner, 20 C.F.R. § 404.983 permits the Appeals Council to act on behalf of the Commissioner and either make the determination itself or remand the case to an administrative law judge with instructions.

reweigh the evidence, or substitute its judgment for that of the Commissioner. *Id*.   Even if this court should find that the preponderance of evidence weighs against the Commissioner's decision, the court must affirm the decision if it is supported by substantial evidence. *Id.*

Unlike this deferential review standard that must be used in evaluating the Commissioner's factual findings, the Commissioner's conclusions of law are not presumptively valid. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).   The decision must be reversed if the Commissioner failed "to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). This requirement that the Commissioner provide sufficient reasoning can, of course, become a question of law for the reviewing court. *See Martin*, 894 F.2d at 1529.

### III.    STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must be "disabled."  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of evaluating

entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Social Security regulations outline a five-step process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Based on this five-step process, the Commissioner reaches a conclusion about the claimant's disability status. As stated above, the Commissioner's initial decision may be appealed to an administrative law judge, then to the Appeals Council, and then to a district court, all of which adhere to the same five-step process. First, the Commissioner must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the Commissioner finds that the claimant engages in substantial gainful activity, the claimant cannot claim disability, and the inquiry ends. 20 C.F.R. § 404.1520(b). Second, the Commissioner must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant cannot successfully claim disability. *Id.* Third, the Commissioner must determine whether the claimant's impairment meets or equals the criteria for an impairment in the

Listing of Impairments.[2] *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.  If such criteria are met, the claimant must be declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not meet the requirements for being declared disabled under the third step, the Commissioner may still find disability under the final two steps of the process.  Before undertaking these steps, the Commissioner must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite the impairment. 20 C.F.R. § 404.1520(e).  When determining a claimant's RFC, the Commissioner considers all evidence relevant to impairment.

In the fourth step, the Commissioner determines whether the claimant's RFC allows the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is found capable of performing past relevant work, the claimant cannot successfully claim disability. *Id.*  If the Commissioner finds the claimant unable to perform past relevant work, the process continues to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v).

The fifth and final step of the process requires the Commissioner to determine whether the claimant is able to perform any other work commensurate with the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g).  At this

---

[2]   The Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1 is used to make determinations of disability based upon the presence of impairments that are considered severe enough to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525.

point, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do in view of his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c). When determining whether jobs exist that the claimant can perform, the Commissioner may elicit testimony from a vocational expert ("VE") by asking the VE hypothetical questions to establish which jobs in the national economy could by performed by someone with the same limitations as the claimant. 20 C.F.R. §§ 404.1520(g), 404.1560(c). Vocational testimony is required when a claimant cannot perform the full range of work at a particular exertional level or has a non-exertional impairment such as pain, fatigue, or mental illness.[3] *Foot v. Chater*, 67 F.3d 1553, 1558-59 (11th Cir. 1995).

In the present case, the ALJ determined that plaintiff was not disabled under the criteria of the first three steps. Although plaintiff satisfied the first two steps by not engaging in substantial gainful activity and by having severe impairments, the ALJ concluded that plaintiff's impairments did not meet or equal an impairment in the Listing of Impairments. R. 19. Preparatory to the fourth and fifth steps, the ALJ assessed that plaintiff had the

---

[3] The Medical-Vocational Guidelines, (the "grids") 20 C.F.R. Part 404, Subpart P, Appendix 2, are used to make determinations of disability based on vocational factors and the RFC when the claimant is unable to perform his relevant past work. § 200.00(a). Such determinations, however, are only conclusive when all criteria of a particular rule are met. *Id.*

8

RFC to perform "sedentary work as defined in 20 C.F.R. § 416.967(a) except his work would not require a significant amount of communications in English." R. 19.   Employing this RFC in the fourth step, the ALJ found that plaintiff was unable to perform his past relevant work. R. 22.   In the fifth step, based on the RFC and VE testimony, the ALJ found that plaintiff could perform other jobs in the national economy and so was not disabled. R. 19-20, 23.

### IV.   FACTUAL BACKGROUND

Plaintiff was seen by Dr. John V. Vanore at the Gadsden Foot Clinic on January 14, 2008. R. 200-03.   Plaintiff reported that he had congenital foot deformities and past surgeries in his native Thailand. R. 202.   Dr. Vanore observed that plaintiff's right leg appeared to be shorter than the left, and there was tenderness on examination of plaintiff's feet. R. 200.   Dr. Vanore told plaintiff his symptoms were likely caused by congenital pathology. R. 200. Dr. Vanore recommended immobilization with an ankle brace and noted that surgical intervention might be considered. R. 200.   On July 25, 2008, Dr. Vanore performed a hammertoe repair and digital exostectomy of the fifth toes on both of plaintiff's feet. R. 159. Plaintiff continued to see Dr. Vanore while awaiting major reconstructive surgery to be performed by Dr. Camasta. R. 194.

Dr. Craig Camasta performed a subtalar and first metatarsophalangeal joint fusion of plaintiff's left foot on October 9, 2008. R. 219.   Following surgery, Dr. Camasta's records

indicate that plaintiff improved but continued to have problems with pain and was "still not doing that great." R. 213-15. On April 15, 2009, Dr. Camasta noted that plaintiff "still has a lot of pain when he stands or walks." R. 213. Dr. Camasta found that plaintiff still had significant foot deformities and arthritis in all of his other joints. R. 213. He diagnosed that plaintiff had "[a]rthritis in the remaining joints post clubfoot with residual deformities." R. 213.

Plaintiff on March 2, 2010, saw Dr. Jimmy Oguntuyo, whose report states that plaintiff continued to have hand swelling with associated pain. R. 238. Plaintiff rated his pain as 6 to 8 on a scale of 1 to 10. R. 238. He reported that the pain was aggravated by activities and relieved by NSAIDs and pain medicines. R. 238. Dr. Oguntuyo diagnosed plaintiff with uncontrolled high blood pressure, rheumatoid arthritis, chronic hepatitis C, and fatigue. R. 239. Dr. Oguntuyo prescribed Celebrex, methotrexate, and Lortab. R. 239. Plaintiff next saw Dr. Oguntuyo on August 21, 2010, complaining of pain in his finger and swelling. R. 236. Plaintiff again rated the pain as 6 to 8 on a scale of 1 to 10 and reported that it was aggravated by activities and relieved by rest. R. 236.

Plaintiff returned to see Dr. Vanore on August 23, 2010, complaining of pain in his left leg. R. 233. Dr. Vanore found that plaintiff had "poor joint mobility on the left side," and was "tender in the hindfoot area with stressing." R. 233. Dr. Vanore

diagnosed plaintiff with chronic residual left foot pain following surgeries. R. 233.   Dr. Vanore commented that plaintiff was applying for disability, and "agreed that he is disabled due to his feet." R. 233.

Dr. Oguntuyo wrote a letter on September 18, 2010, separate from his routine office reports, stating that plaintiff had hypertension, rheumatoid arthritis, chronic hepatitis C, fatigue, bilateral ankle pain following ankle surgery secondary to congenital club feet, and congenital club foot. R. 235.   In the letter, Dr. Oguntuyo said that "[t]he ankle pain and Rheumatoid arthritis are incapacitating and [plaintiff] cannot be gainfully employed." R. 235.

After the ALJ's adverse decision, plaintiff appealed and submitted new evidence to the Appeals Council.   The new evidence included a report from Dr. Oguntuyo dated February 15, 2010. R. 241-44.   The report states that plaintiff presented with "diffused joint pain" in the hands and elevated blood pressure. R. 241.   Dr. Oguntuyo found mild bilateral lower extremity swelling and joint pain, worse in the hands with associated swelling of the hands and knuckles. R. 241.   Plaintiff rated the pain as 6 to 8 on a scale of 1 to 10. R. 241.   Dr. Oguntuyo assessed the pain as "incapacitating to [the] point of not being able to grip well." R. 241.   He diagnosed hypertension, multiple site osteoarthritis, left ankle surgery, and fatigue. R. 242.

Plaintiff also submitted as new evidence two reports from Dr. Daniel S. Prince, a rheumatologist. R. 246-50.  Dr. Prince saw plaintiff on November 3, 2010 upon referral from Dr. Vanore. R. 246.  The report from that visit states that plaintiff "has pain in his left wrist and his left fourth finger and has difficulty with grip and pinch." R. 246.  It notes that plaintiff had congenital club foot deformities, and that the surgeries "for both feet have failed." R. 246.  On physical examination, Dr. Prince observed that plaintiff's "left fourth finger is in trouble with flexion/extension, but there is really no evidence of an inflammatory synovitis." R. 247.  Dr. Prince did not believe that plaintiff had rheumatoid arthritis and thought his symptoms likely related to hepatitis C. R. 247.  Dr. Prince diagnosed seronegative arthritis secondary to hepatitis C, changed plaintiff's medications, and prescribed Lortab for pain. R. 247.  Plaintiff saw Dr. Prince again on April 6, 2011, and the report from that visit indicates that plaintiff "still has trigger finger problems in his right hand in the ring finger and the third finger." R. 249.  On physical examination, Dr. Prince found that "[b]oth wrists and the right third flexor tendon do have a trigger finger problem." R. 249.  There was also "some puffiness and tenderness in some of the [large joints in the hand at the base of the fingers]."[4] R. 249.

---

[4]  Dr. Prince references the "MP joints."  As explained by the American Society for Surgery of the Hand,"[t]he large joints in the hand at the base of each finger are known as the metacarpophalangeal (MP, or MCP) joints." THE AMERICAN SOCIETY FOR SURGERY OF THE HAND,

## V.   DISCUSSION

Plaintiff claims that he first became disabled on June 1, 2008, because of severe pain caused by congenital defects in his feet and arthritis in his hands. R. 17, 21, 36-40.  He raises three issues on this appeal: (1) whether the Appeals Council erred in denying review of the ALJ's decision (whatever a "denial of review" means); (2) whether the ALJ erred in failing to ask the VE to consider the vocational impact of impairments to his left hand; and (3) whether the ALJ properly considered the opinions of his treating physicians.

(1)  Appeals Council's "Denial of Review"

Plaintiff submitted new evidence to the Appeals Council in connection with his request for review of the ALJ's decision.  That new evidence consists of a report from Dr. Oguntuyo[5] dated February 15, 2010, and reports from Dr. Daniel S. Prince dated November 3, 2010, and April 6, 2011.  Plaintiff argues that this new evidence shows more limitations in the use his hands than were found by the ALJ.

_____

http://www.assh.org/Public/HandConditions/Pages/ArthritisMPJoint.aspx (last visited Nov. 19, 2013).

[5]  The Appeals Council lists this report as medical records from Dr. O. Akisanya. R. 4.  However, the handwriting and signature match those on Dr. Oguntuyo's other reports. *See* R. 237, 239.  Also, the laboratory reports attached to the report submitted to the Appeals Council list Dr. Jimmy Oguntuyo as the physician. R. 243-44.

13

If a claimant submits new evidence to the Appeals Council, the regulations require the Appeals Council to "review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b).  The Appeals Council considered both the old and the new evidence but found that the evidence did not provide a basis for changing the ALJ's decision. R. 1-2. Plaintiff argues that the Appeals Council erred in not granting benefits or ordering new proceedings based on the new evidence.

A claimant may submit new evidence at each step of the administrative review process. 20 C.F.R. § 404.900(b) ("In each step of the review process, you may present any information you feel is helpful to your case.").  The Appeals Council is required to consider new and material evidence if it relates to the period on or before the ALJ's decision. 20 C.F.R. § 404.970(b).  If a claimant submits evidence that does not relate to the period on or before the ALJ's decision, **the Appeals Council must return the evidence to the claimant with an explanation of why the evidence is being returned.** 20 C.F.R. § 404.976(b).  The Appeals Council did not return the new evidence submitted by the claimant in this case. Therefore, it presumably found that the evidence related to the period on or before the ALJ's decision.

Because plaintiff properly presented evidence to the Appeals Council, which actually considered it, the said new evidence forms

part of the administrative record. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007)*.* In examining on appeal the decision of the Appeals Council "to deny review," this court "must consider whether that new evidence renders the denial of benefits erroneous." *Id.* at 1262. Therefore, this court must consider whether the Appeals Council correctly concluded that the ALJ's decision was supported by substantial evidence and was not contrary to the great weight of the evidence in the administrative record as a whole, including the new evidence presented to the Appeals Council*. See id.* at 1266-67 (remanding to the district court to determine whether the Appeals Council correctly found the ALJ's decision was not contrary to the weight of the evidence).

Plaintiff argues that the evidence submitted to the Appeals Council shows limitations in the use of his hands that prevent him from performing the sedentary jobs identified by the VE. The VE testified that plaintiff would be able to perform three types of jobs in the Dictionary of Occupational Titles ("DOT"):[6] inspector/sorter; product assembler; and machine feeder/operator. R. 41. **All three of these jobs require frequent handling**, approximately 1/3 to 2/3 of the work time. *See* DICOT 713.687-018, 1991 WL 679271 (G.P.O.); DICOT 690.685-194, 1991 WL 678545 (G.P.O.); DICOT 521.687-086, 1991 WL 674226 (G.P.O.). Social

---

[6] The Dictionary of Occupational Titles is published by the Department of Labor and used by the Commissioner to take administrative notice of the presence of jobs in the national economy. 20 C.F.R. §§ 404.1567(d), 416.967(d).

Security Ruling ("SSR") 85-15 provides that handling means "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands." SSR 85-15, 1985 WL 56857, *7 (S.S.A.).   Two of the three jobs, inspector/sorter and product assembler, also require frequent fingering. *See* DICOT 713.687-018, 1991 WL 679271 (G.P.O.); DICOT 521.687-086, 1991 WL 674226 (G.P.O.).   Fingering "involves picking, pinching, or otherwise working primarily with the fingers." SSR 85-15, 1985 WL 56857, *7 (S.S.A.).  This court cannot separate "pinching" from "gripping."

At the ALJ hearing, plaintiff testified that his rheumatoid arthritis prevented him from bending his finger. R. 39.   Three medical assessments prior to the ALJ's decision indicated significant pain and arthritis in his hands. R. 235, 236, 238.  In spite of this evidence, the ALJ found no limitations on plaintiff's use of his hands in the RFC finding. R. 19.  The only reasoning provided is that plaintiff "has the beginning symptoms of rheumatoid arthritis, but these are in his left, non-dominant hand." R. 22.   The ALJ did not ask the VE to consider any limitations in the use of plaintiff's hands, whether bilateral or limited to the left hand. R. 41-42.

The new evidence presented to the Appeals Council includes a report from Dr. Oguntuyo dated prior to the ALJ's decision.  The newly submitted report, dated February 15, 2010, shows that plaintiff presented with "diffused joint pain." R. 241.  Plaintiff

16

said that the pain was worse in his hands, and Dr. Oguntuyo noted associated "swelling of the hands [and] knuckles." R. 241. Plaintiff rated the pain as 6 to 8 on a scale of 1 to 10. R. 241. Dr. Oguntuyo concluded that the pain was "incapacitating to [the] point of not being able to grip well." R. 241.

The Appeals Council also had before it the new evidence consisting of two reports from Dr. Prince, plaintiff's treating rheumatologist. R. 246-247.  Dr. Prince's report of November 3, 2010, says that plaintiff reported pain in his left wrist and left fourth finger and also difficulty with gripping and pinching. R. 246.  On physical examination, Dr. Prince found that plaintiff's left fourth finger was "in trouble with flexion/extension." R. 247. The second report from Dr. Prince, dated April 6, 2011, states that plaintiff reported continuing "trigger finger problems in his right hand in the ring finger and the third finger." R. 249.  On physical examination, Dr. Prince found that "[b]oth wrists and the right third flexor tendon do have a trigger finger problem" and observed "some puffiness and tenderness in some of the [large joints in the hand at the base of the fingers]." R. 249; *see supra* note 3.

This new evidence, together with the evidence submitted to the ALJ, shows that plaintiff had swelling in his hands and knuckles beginning in February 2010 with associated pain "incapacitating to the point of not being able to grip well." R. 241.  The Appeals Council had before it reports from February 2010, March 2010,

17

August 2010, September 2010, and November 2010, all related to plaintiff's hand impairment. R. 247, 235, 236, 238. Thus, even without consideration of Dr. Prince's April 2011 report, the record before the Appeals Council showed that plaintiff had significant problems with his hands caused by arthritis.[7]

Based upon the record as a whole, this court concludes that substantial evidence does not support the ALJ's RFC finding. The ALJ's finding of no limitation in plaintiff's hands is not reasonable and is not supported by substantial evidence in light of the significant and **uncontradicted** medical evidence that plaintiff was limited in his ability to grip and use his fingers prior to the date of the ALJ's decision. Therefore, the Appeals Council erred in failing to disagree with the ALJ by failing to grant "a review." On remand, the Commissioner can consider the entire record, including the evidence submitted to the Appeals Council, in assessing plaintiff's RFC.

(2)   Failure to Have VE Consider Vocational Impact of Hands

Plaintiff further argues that the ALJ erred in failing to ask the VE to consider the vocational impact of the impairments to plaintiff's left hand based on the record at that time. The ALJ's

---

[7] The Commissioner argues that Dr. Prince's April 2011 report does not relate to the period on or before the date of the ALJ's decision. Because the other evidence submitted to the Appeals Council is sufficient to render the ALJ's decision erroneous, the court need not decide whether the April 2011 report so relates. The Commissioner will be in a better position to determine its relevance on remand.

RFC finding did not mention any limitations on the use of plaintiff's hands, apparently because the ALJ found that plaintiff only had symptoms in his left, nondominant hand. R. 22.  Plaintiff argues that SSR 96-9p requires the ALJ to question the VE about the impairment to his nondominant left hand.  That ruling recognizes that "[m]ost unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity." SSR 96-9p, 1996 WL 374185, *8 (S.S.A.).  SSR 96-9p also provides that "any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." *Id.*  The ruling recognizes that consulting a VE may prove useful "[w]hen the limitation is less significant, especially if the limitation is in the non-dominant hand." *Id.*

Because the case must be remanded for further proceedings, which will include consideration of the evidence submitted to the Appeals Council, it is not necessary to decide whether the ALJ erred in failing to mention limitations in plaintiff's use of his nondominant hand based only on the evidence available to the ALJ. However, on remand the Commissioner should ensure that the procedures set forth in SSR 96-9p are followed.

(3)  ALJ's Consideration of Treating Physicians' Opinions

Plaintiff next argues that the ALJ did not properly consider the opinions of his treating physicians.  Under the Commissioner's

19

regulations, a treating physician's opinion will be given controlling weight if well supported "by medically acceptable clinical and laboratory diagnostic techniques" and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In considering whether an ALJ has properly addressed a treating physician's opinion, "[t]he law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted). The ALJ must clearly articulate any reasons for rejecting a treating physician's opinion. *Id.* ("The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error.")

Plaintiff's treating physician, Dr. Oguntuyo, wrote a letter on September 18, 2010, stating that plaintiff's "ankle pain and Rheumatoid arthritis are incapacitating and he cannot be gainfully employed." R. 235. The ALJ described this letter and observed that Dr. Vanore "agreed in his notes dated August 23, 2010, that the claimant was disabled due to his feet." R. 21. However, the ALJ concluded that these statements did not qualify as "medical opinions." The ALJ's discussion of these opinions is as follows:

> An opinion that a claimant is disabled is not a medical opinion. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of

20

> a claimant's impairment(s)..., what the claimant can
> still do despite his or her impairment(s), and the
> claimant's physical and mental restrictions. An opinion
> that a person is disabled is reserved for the
> Commissioner because it is an administrative finding that
> is dispositive of a case.... A statement by a medical
> source that a claimant is "disabled" or "unable to work"
> does not mean that the Social Security Administration
> will determine that the claimant is disabled. (20 C.F.R.
> § 404.1527(e)).

R. 21. The ALJ correctly characterized Dr. Oguntuyo's statement
that plaintiff "cannot be gainfully employed," and Dr. Vanore's
statement that plaintiff "is disabled due to his feet," as not
constituting "medical opinions" as defined in the regulations. The
regulations provide that doctors' opinions are not medical opinions
if given on questions reserved to the Commissioner, particularly
whether a person is disabled or unable to work. 20 C.F.R. §§
404.1527(d), 927(d). However, such statements must still be
considered even though they are not medical opinions with
controlling weight. SSR 96-5p, 1996 WL 374183, *2 (S.S.A.) ("[O]ur
rules provide that adjudicators must always carefully consider
medical source opinions about any issue, including opinions about
issues that are reserved to the Commissioner.").

More importantly, the ALJ failed properly to consider the
remainder of Dr. Oguntuyo's opinion, which did not invade the
province of the Commissioner. Dr. Oguntuyo's letter states that
plaintiff's "ankle pain and the Rheumatoid arthritis are
incapacitating...." R. 235. In *Winschel v. Commissioner of Social
Security*, the Commissioner argued that the ALJ was not required to

consider the reports of the claimant's treating physician because they did not contain a medical opinion. 631 F.3d 1176, 1179 (11th Cir. 2011).   The *Winschel* court rejected the Commissioner's argument. *Id.*   It determined that the reports contained "a description of Winschel's symptoms, a diagnosis, and a judgment about the severity of his impairments." *Id.* (citing 20 C.F.R. §§ 1527(a)(2), 416.927(a)(2)).   The regulation cited by *Winschel* provides that a physician's "judgments about the nature and severity of your impairment(s), including your symptoms" are medical opinions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a).   Dr. Oguntuyo's letter contains a judgment about the severity of plaintiff's pain and rheumatoid arthritis in his hands, namely that they are incapacitating.   That judgment is a medical opinion that the ALJ must consider.   The ALJ in the instant case was, in this court's opinion, hypertechnical.

If the ALJ considered and rejected Dr. Oguntuyo's opinions for any reason other than he did not consider them medical opinions, such a reason cannot be found in his decision.   Other grounds may exist for rejecting or giving little weight to Dr. Oguntuyo's opinions, but in the absence of **articulated** reasons, the court cannot determine whether the ALJ gave the opinions the consideration they deserved, something crucial to a decision as to whether the ALJ's decision is reasonable and supported by substantial evidence. *See Winschel*, 631 F.3d at 1176 ("[W]ithout

clearly articulated grounds for [rejecting the treating physician's medical opinion], we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence.").

The court's inability to assess whether the ALJ properly considered Dr. Oguntuyo's opinions matters because the said opinion included the treating physician's findings about the severity and impact of plaintiff's rheumatoid arthritis, which primarily affects his hands.  The ALJ found no restrictions on the use of plaintiff's hands in the RFC finding.  However, Dr. Oguntuyo's opinions strongly suggest that plaintiff's rheumatoid arthritis imposes significant limitations on the use of his hands.  Because the ALJ failed to articulate reasons for rejecting Dr. Oguntuyo's opinions about the severity of plaintiff's impairments, the Commissioner's decision must be reversed.

## VI.   CONCLUSION

The court concludes that the Appeals Council erred in denying a full review of the ALJ's decision and that the ALJ did not properly consider the opinions of plaintiff's treating physicians. Therefore, the ALJ's decision will be reversed and remanded to the Commissioner for further proceedings, in which the Appeals Council or ALJ shall explicitly consider and explain the weight to be accorded to the medical opinions of plaintiff's treating physicians regarding the severity of plaintiff's impairments.  An order will be entered accordingly.

DONE this 22nd day of November, 2013.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE